545 So.2d 306 (1989)
J.C.W., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1828.
District Court of Appeal of Florida, First District.
April 14, 1989.
Rehearing Denied July 7, 1989.
Michael E. Allen, Public Defender, Paula S. Saunders, Asst. Public Defender, Glenna Joyce Reeves, Asst. Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., William A. Hatch, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
The juvenile appellant in this case appeals the trial court's denial of her motion to suppress evidence and statements obtained after an allegedly unlawful stop. We affirm.
According to the evidence presented at the hearing on appellant's motion to suppress, Officer Crumpler of the Tallahassee Police Department received a radio call from a police investigator at approximately 12:15 a.m. on April 6, 1988, advising him to be on the lookout for a black male walking north on Macomb Street in Tallahassee, believed to be holding illegal narcotics. Approximately thirty minutes after receiving the call, Crumpler located a black male fitting the detailed description given by the investigator, walking north on Macomb Street with appellant, a female who appeared to be a juvenile. From his experience on the Police Department's "Crack Squad" in that particular area of Tallahassee, Crumpler was aware that drug dealers often used juveniles, sometimes females, to act as "mules," or to hold illegal narcotics for them so that they would not be caught with a large quantity. Crumpler also knew the area to have a reputation for narcotics dealing and other criminal activities, had made numerous drug arrests in the area, and had seen the appellant in the area on a number of occasions. Prior to Crumpler's approach, appellant and the male suspect were walking close together and talking to each other. As Crumpler parked and exited his marked patrol car, the two began to act as if they did not know each other, and walked away from each other in opposite directions.
Crumpler's first course of action was to direct the male suspect to the patrol car and conduct a pat-down search. No narcotics were found on his person. Crumpler then stopped the appellant, who at that point had walked approximately 15 feet *307 away. He inquired as to her name, age, and address, and then "went into the reason why she was being stopped, the mule idea." According to Crumpler, he then asked appellant "if it would be okay if [he] searched her for any illegal narcotics," appellant consented, then reached into her top left-hand shirt pocket for what appeared to be a napkin. Crumpler stopped appellant's hand and removed the napkin, and found it to contain a small bag of crack cocaine. After advising the appellant of her rights, Crumpler placed her under arrest and transported her to the police station for further questioning. During questioning, appellant gave a voluntary admission.
Appellant argues on appeal that Officer Crumpler did not have a founded suspicion of illegal activity and, therefore, that his detention of her was illegal. Appellant further asserts that the illegal stop tainted her consent to be searched, and that the trial court erred in failing to suppress both the evidence seized from her shirt pocket and her subsequent, post-arrest, admission. We disagree.
It is well settled that a police officer must have a well founded and articulable suspicion of criminal activity before conducting an investigatory stop which amounts to a "seizure"  albeit a temporary one  of a person. See section 901.151, Florida Statutes; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It is equally well settled, however, that not all encounters between police officers and citizens amount to constitutionally protected seizures. To the contrary, a seizure occurs only when, by means of physical force or show of authority, one's freedom of movement has been restrained and when, in light of all the surrounding circumstances, it may be said that a reasonable person would have believed that he or she was not free to leave. U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Terry v. Ohio, supra. As the Supreme Court stated in Mendenhall, examples of circumstances indicating such a seizure would include:
the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled... . In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.
U.S. v. Mendenhall, 446 U.S. at 554-55, 100 S.Ct. at 1877 (citations omitted). Where a police officer merely approaches a citizen to ask questions or to check for identification, and the contact between the police officer and citizen "evokes voluntary cooperation on the part of the citizen," the encounter is not a seizure within the meaning of the Fourth Amendment. State v. Rawlings, 391 So.2d 269, 270 (Fla. 4th DCA), petition denied, 399 So.2d 1145 (Fla. 1981). See I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Sommer v. State, 465 So.2d 1339 (Fla. 5th DCA 1985); Burke v. State, 465 So.2d 1337 (Fla. 5th DCA 1985); Lightbourne v. State, 438 So.2d 380 (Fla. 1983).
The facts in the instant case do not indicate that Officer Crumpler's encounter with the appellant was so forceful, intimidating, or oppressive that a reasonable person would have believed she was not free to leave, and do not include any of the threatening or coercive indicia of seizure outlined in U.S. v. Mendenhall. The appellant was not physically detained, ordered to stop, or held in any manner. In fact, Crumpler's first concern was with the male suspect, and not with the appellant. The evidence indicates that while Crumpler was frisking the male suspect, the appellant continued to walk away, without Crumpler making any attempt to stop her. It was only after Crumpler had finished with the male suspect that he then approached appellant and asked her several questions. Finding that no seizure occurred, it is unnecessary to discuss whether Officer Crumpler had a founded suspicion of criminal activity. In light of appellant's subsequent *308 consent to be searched, and of her voluntary post-arrest statement, we affirm the trial court's denial of appellant's motion to suppress.
AFFIRMED.
SMITH, C.J., and WENTWORTH, J., concur.